NOT DESIGNATED FOR PUBLICATION

No. 120,437

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FLOYD J.C. YEAGLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed November 22, 2019. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Robert A. Walsh*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BRUNS, J., and BURGESS, S.J.

PER CURIAM: Floyd J.C. Yeagley appeals from the district court's revocation of his probation and imposition of his underlying sentence for possession of methamphetamine. On appeal, Yeagley recognizes that the district court had the authority to revoke his probation and impose his underlying sentence. Nevertheless, he contends that the district court's action constitutes an abuse of discretion. Based on our review of the record on appeal, we conclude that the district court's decision was reasonable and was not based on either an error of law or an error of fact. Thus, finding no abuse of discretion, we affirm the district court.

FACTS

In November 2017, Yeagley entered into a plea agreement with the State in which he pleaded no contest to one count of possession of methamphetamine. In exchange for Yeagley's plea, the State dismissed several other pending charges. Although he had a criminal history score of B, Yeagley moved for a dispositional departure. In January 2018, the district court granted Yeagley's motion for a departure. Accordingly, the district court sentenced him to 34 months in prison suspended to 12 months' probation.

Several months later, Yeagley absconded to Oklahoma. In August 2018, the State moved to revoke Yeagley's probation for failure to report to his probation officer and failure to attend group sessions with his treatment providers as required. The district court issued a bench warrant and Yeagley was arrested in Oklahoma a little over a month later. He was then returned to Kansas for a probation revocation hearing.

At the revocation hearing, Yeagley's probation officer testified that although Yeagley initially had been doing well on following the terms of his probation, he then stopped reporting and stopped going to treatment sessions. The probation officer further testified that he attempted to contact Yeagley by phone in July but the number did not work. He also testified that Yeagley did not have permission to leave Kansas.

Yeagley testified that he had been overwhelmed by problems in his personal life and due to problems with his apartment, he stopped paying rent. The landlord ultimately evicted Yeagley from his apartment. He also lost his job around the same time. Moreover, Yeagley testified that his probation officer recommended that he pursue mental health treatment. However, he did not follow through on this recommendation.

In addition, Yeagley testified that he missed an appointment with his probation officer on July 5, 2018. Yeagley claimed he did not know about the other two

appointments he missed, apparently because he could not get his mail. Nevertheless, Yeagley admitted that he had been on probation several times before and knew he needed to report to his probation officer.

Yeagley testified that a woman offered him $300 in the summer 2018 to drive her to Oklahoma and he agreed. Furthermore, Yeagley asserted that he had not been trying to hide but was simply trying to get his life back on track. Thus, he asked the district court for another chance at probation.

After considering the testimony and argument, the district court revoked Yeagley's probation and ordered him to serve his underlying prison sentence. In reaching its decision, the district court found Yeagley knew he had an obligation to stay in touch with his probation officer but had failed to do so. The district court also noted Yeagley's presumptive sentence was imprisonment, and that he had "told this Court [he] would do every single thing [he] had to" on probation but had instead "walked away" from reporting to his probation officer and from treatment.

ANALYSIS

On appeal, Yeagley does not challenge the district court's finding that he violated his probation. He also does not challenge the district court's finding that he absconded. Instead, Yeagley contends that the district court abused its discretion by revoking his probation and imposing his underlying sentence.

Probation is "'an act of grace by the sentencing judge and, unless otherwise provided by law, is granted as a privilege not a right.'" *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). After the State establishes a probation violation by a preponderance of the evidence, the decision to revoke probation rests within the discretion of the district court. See *State v. Skolaut*, 286 Kan. 219, 227-28, 182 P.3d 1231 (2008); *State v.*

3

*Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1131 (2006). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Hubbard*, 309 Kan. 22, 43, 430 P.3d 956 (2018). The party claiming an abuse of discretion—in this case Yeagley—bears the burden of showing the district court abused its discretion. See *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

K.S.A. 2018 Supp. 22-3716(c) generally requires a district court to impose a series of graduated sanctions before revoking a defendant's probation and imposing the underlying sentence for a probation violation. The statute also provides exceptions allowing district courts to bypass these intermediate sanctions. One of the exceptions grants a district court the authority to revoke probation if the offender "absconds from supervision." K.S.A. 2018 Supp. 22-3716(c)(8)(B). Another exception grants a district court the authority to revoke probation if it had granted probation as a dispositional departure. K.S.A. 2018 Supp. 22-3716(c)(9)(B). It is undisputed that both of these exceptions are applicable in this case.

Yeagley argues that the district court abused its discretion when it refused to reinstate his probation. According to Yeagley, the district court failed "to acknowledge and appreciate his self-confessed depression and resulting bad decision making" and should have honored "his reasonable request for treatment." However, we find this argument to be unpersuasive based on our review of the record.

Yeagley admits many of his problems were a result of his decision to stop paying his rent. Although he claims his poor decision making was a result of his depression, Yeagley acknowledges that he did not follow through on his probation officer's recommendation to seek mental health treatment. Instead of doing so, he stopped complying with the terms of his probation and went to Oklahoma without telling his probation officer. Under these circumstances, a reasonable person could agree with the

4

district court's decision to revoke Yeagley's probation and impose the underlying sentence.

Yeagley also argues the district court should have reinstated his probation because he had acknowledged "his immediate problems may be primarily the result of an underlying drug addiction or mental health issue for which [he] is willing to continue to seek help." We also find this argument to be unpersuasive. Yeagley testified he had not used illegal drugs while on probation, so it is unclear how his drug addiction could have caused him to violate the terms of his probation. Moreover, he stopped attending his substance abuse treatment sessions. Thus, Yeagley's actions belie his claim that he was willing to continue to seek help.

In summary, Yeagley was aware of what was expected of him on probation. In fact, the record reflects that he had previously been on probation on several prior occasions. He was also aware that any violations could result in imposition of his underlying sentence. His violations were not a simple oversight. Yeagley failed to report to his probation officer three times, stopped attending treatment sessions, and left Kansas without permission. Accordingly, we conclude that the district court did not abuse its discretion in revoking Yeagley's probation or in ordering him to serve his underlying sentence.

Affirmed.